**NO. 25-1187**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

NYZIER FOURQUREAN,

*Plaintiff–Appellee*,

*v.*

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

*Defendant–Appellant.*

Appeal from an Order of the United States District Court for the Western District of Wisconsin
Honorable William M. Conley, District Judge

# DEFENDANT-APPELLANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION TO EXPEDITE


Thomas L. Shriner, Jr.
Kate E. Gehl (Counsel of Record)
Max S. Meckstroth
David J. Wenthold
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.297.5601 (TLS)
414.297.5279 (KEG)
414.319.7022 (MSM)
414.297.4985 (DJW)
tshriner@foley.com
kgehl@foley.com
mmeckstroth@foley.com
dwenthold@foley.com

*Counsel for Defendant-Appellant National Collegiate Athletic Association*


February 12, 2025

Pursuant to 28 U.S.C. § 1657(a) and Fed. R. App. P. 2 and 27, as well as Cir. R. 2, Defendant-Appellant National Collegiate Athletic Association ("NCAA"), by its undersigned attorneys, moves for an order to expedite the briefing and oral argument of this appeal from an order and preliminary injunction issued by the district court on February 6, 2025, whereby it preliminarily enjoined the NCAA from enforcing certain eligibility rules as to Plaintiff-Appellee Nyzier Fourqurean for the upcoming 2025 college football season.

**Background and Procedural History**

This appeal arises from expedited district court proceedings, and concerns the application of core rules governing the eligibility of student-athletes competing in NCAA Division I sports. Plaintiff had competed in the maximum-permitted four full seasons of football at the end of the University of Wisconsin's ("UW") 2024 season and graduated from UW in December.[1] (Dkt. 1, ¶ 27; Dkt. 15 at 9-11; Dkt. 16, ¶¶ 28-34.) At plaintiff's behest, UW applied to the NCAA in December for a waiver of the Division I season of competition rules so that he could compete for a fifth season in 2025. Plaintiff contended that his 2021 season (his first year of competition at a Division II school from which he later transferred to Division I UW) should not be counted because the effect of his father's death before that

[1] The eligibility rule in question is commonly known as the "Five-Year Rule." The rule is, however, comprised of two components – a student-athlete's "eligibility clock" and the number of seasons of competition in which a student-athlete may participate. (Dkt. 16, ¶ 17.) The rule provides that student-athletes may compete in no more than four seasons of competition within five years of having enrolled in college. (*Id.*) Plaintiff sought a waiver that would allow him an additional, fifth season of competition – there are no issues with respect to his eligibility clock. (Dkt. 16, ¶¶ 34, 42-43.)

season prevented him from being able to participate (for purposes of the eligibility rules) during the 2021 season inasmuch as he had played in "only 155 total snaps." (Dkt. 1, ¶¶ 19-21, 28; Dkt. 37, ¶ 3, Ex. A.) After giving full and fair consideration of all materials submitted in support of the waiver request, the NCAA denied it on Wednesday, January 29, 2025, relying primarily on the fact that plaintiff was able to meaningfully participate in the 2021 season – evidenced by the fact that he played in eleven of twelve games, including the post-season. (*See generally* Dkt. 37; *see also* Dkt. 16, ¶¶ 30, 35-43.)

Later that same day, plaintiff sued the NCAA in the district court in Madison, asserting two federal antitrust claims and five claims under Wisconsin tort and contract law. (Dkt. 1, ¶¶ 29, 31–130.) Plaintiff also sought emergency relief, asking the district court to preliminarily enjoin the NCAA from enforcing certain Division I eligibility rules, so as to permit him to play another season. (Dkt. 2.) Plaintiff did not submit any economic analysis (expert or otherwise) or empirical evidence to substantiate his antitrust claims, limiting his submission to his brief and the letters from fact witnesses that had been submitted to and considered by the NCAA in ruling on the requested waiver. (Dkt. 3; Dkt. 4, Exs. A-C & K.)

Plaintiff argued that time was of the essence because of a February 7, 2025 deadline to withdraw from the NFL draft in order to maintain potential collegiate eligibility. (Dkt. 1, ¶ 10.) Heeding plaintiff's request, the district court immediately scheduled a hearing on the preliminary injunction motion for the following Tuesday, February 4, and gave the NCAA only until Monday, February 3, to file its

responsive papers. (Dkt. 8.) The district court held a hearing on February 4 and on Thursday evening, February 6, granted plaintiff's motion on the basis that he had shown a likelihood of success on his antitrust claim, had no adequate remedy at law, and would be irreparably harmed absent a preliminary injunction. (*See* 24; Dkt. 39; Dkt. 40.) The district court preliminarily enjoined the NCAA from "enforcing [its challenged eligibility rules] as to plaintiff absent a more meaningful demonstration that exceptions to that rule should not apply to plaintiff's requested, additional season of eligibility given the unique circumstances surrounding his 2021-2022 season at Division II Grand Valley State University." (Dkt. 40; *see also* Dkt. 39.)

On February 7, the NCAA filed its notice of appeal. (Dkt. 41.) Following the accelerated district court proceedings, the NCAA requests an expedited appeal to rectify the district court's error and minimize further disruption of the eligibility process, and the erosion, perceived or actual, of longstanding rules that govern how long student-athletes can compete.

The NCAA did not file the usual motion to stay the district court's preliminary injunction in either the district court or this Court, for several reasons. First, given the less than 24 hours between the issuance of the preliminary injunction (February 6, 7:17 p.m.) and the NFL's draft-withdrawal deadline (February 7, 3:00 p.m.), it was impracticable to obtain such a stay. Second, the harm caused to the NCAA by the preliminary injunction, as a practical matter, can only be repaired by an expedited hearing and reversal on appeal. Expedited

treatment of the appeal will benefit not only the NCAA, but also the approximately 350 Division I member schools and their student-athletes, by providing: (1) clarity regarding the enforcement of the NCAA's eligibility rules after *Nat'l Collegiate Athletic Ass'n v. Alston,* 594 U.S. 69 (2021), for football and all other NCAA sports; and (2) consistency in the application of such rules to plaintiff and all future student-athletes who may wish to seek relief from the eligibility rules.

**Relief Requested**

The NCAA requests that the Court expedite the briefing and oral argument in this appeal so that it may be heard at the earliest possible date. The NCAA requests that briefing begin as soon as possible and that the Court schedule oral argument as quickly as feasible thereafter. For the reasons discussed herein, there is good cause to expedite this appeal, and doing so would cause no prejudice to either party.

**Grounds for an Expedited Appeal**

Pursuant to 28 U.S.C. § 1657(a), courts "shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown." This appeal concerns the district court's grant of preliminary injunctive relief, so expedited consideration is warranted. *See, e.g.*, *Chicago Teachers Union, Local 1 v. Board of Educ.*, 662 F.3d 761, 763 (7th Cir. 2011) (noting grant of expedited review of district court's preliminary injunction requiring board to rescind discharges of tenured teachers); *Nader v. Keith*, 385 F.3d

729, 731 (7th Cir. 2004) (expediting briefing and consideration of district court's decision on motion for preliminary injunction in light of upcoming election).

Good cause also exists to expedite the appeal because the district court's order erroneously applying federal antitrust law gives rise to a significant degree of uncertainty as to the enforceability of some of Division I's core eligibility rules. The NCAA believes that this will have (and has already had) far-reaching effects on both the NCAA and student-athletes. Expediting this appeal provides an opportunity to calm these unsettled waters and restore the enforcement of the rules and consideration of waiver requests to an orderly process.

The NCAA and its Division I member schools find themselves trying to navigate the application of the eligibility rules in the face of a district court order that erroneously concludes, without equivocation, that the NCAA's supposed "wooden application of [the] eligibility rules and exceptions not only caused plaintiff injury but more likely than not impacted the larger market for like college football players." (Dkt. 39 at 18.) Thus, although the court's preliminary injunction applies by its terms only to plaintiff (Dkt. 39 at 22; Dkt. 40 at 1), other student–athletes are sure to pick up the thread and argue that its reasoning should be extended to *their* requests for additional seasons of competition or eligibility as well, or that the eligibility rules more generally run afoul of the federal antitrust laws.

In fact, at least one student-athlete has already filed a similar lawsuit against the NCAA in the District of Massachusetts. *See Ciulla–Hall v. NCAA*, No. 1:25-cv-10271, Dkt. 1 (D. Mass Feb. 4, 2024). There, a baseball player argued that

he, too, should be afforded an additional season of competition to play for the University of Maryland. *Id.*, Dkt. 8. The morning after the district court's decision in this case came down, the plaintiff cited it, arguing that his time playing at a Division II school should not count against his eligibility because student–athletes are entitled "to enjoy *four meaningful years of collegiate sports*." *Id.*, Dkt. 13 (Feb. 7, 2024) (citing the order entered in this case). Although the Massachusetts district court denied the plaintiff's motion for a preliminary injunction in *Ciulla-Hall, id.*, Dkt. 15 (D. Mass. Feb. 7, 2025) (order denying preliminary injunctive relief), the speed with which another litigant seized on what occurred in this case provides a glimpse into the administrative and legal proceedings that the NCAA is likely to endure in light of the district court's decision, until it is corrected by this Court.

Plaintiff himself advocated for this eventuality. (*See* Dkt. 3 at 21 (arguing that others "similarly situated" should be entitled to the same relief he seeks); *see also* Dkt. 1, ¶ 43 (alleging that the NCAA's actions affect plaintiff "and similarly situated athletes").) The prospect of more follow-on cases is particularly acute with respect to other college football players who may seek eligibility waivers before the 2025 season.[2] If the NCAA is to deny any such waivers, those student-athletes may perceive the district court's order as opening the door to unfettered judicial review of such decisions under the premise that the denial of their waiver (or application of the eligibility rules altogether) violates the antitrust laws. This will inevitably lead

[2] Of course, as shown in *Ciulla-Hall*, however, the district court's order may very well embolden lawsuits by student-athletes playing other sports as well.

to a deluge of lawsuits seeking to enjoin the NCAA from applying the eligibility rules as to *them*. In short, the district court's order stands to cause the NCAA significant institutional harm and hamstring its ability to interpret and apply its membership's rules.

It will also necessarily – and importantly – impact the decisions and college careers of other student-athletes who otherwise would benefit from the opportunities created (*e.g.*, roster spots/playing time) by the departure of student-athletes like plaintiff in this case who would otherwise have exhausted their eligibility. A prompt, expedited resolution of this appeal will minimize this harm and provide additional clarity to the collegiate athletic landscape heading into upcoming seasons of competition.

Moreover, plaintiff cannot legitimately claim that expediting resolution of this appeal will cause him any harm. The Court will either determine that the preliminary injunction here stands, in which case there will have been no change in plaintiff's position. Or the Court will determine that the preliminary injunction should *not* have been granted, in which case he cannot claim harm because he is no longer benefiting from an injunction that should never have been issued. In either scenario, resolving this appeal expeditiously will provide *both* parties with clarity as to how they should proceed with their respective endeavors going forward – plaintiff as he prepares for the 2025 season at UW, and the NCAA as it applies the eligibility rules adopted by its member schools.

Indeed, as a practical matter, the district court's order has cast the Division I eligibility rules into question, creating real challenges for the NCAA as it enforces those rules for the benefit of its membership. Expediting this appeal is therefore crucial to ensuring that the NCAA is able to interpret and apply the eligibility rules consistently and fairly across the country, with respect to all its member schools and their student-athletes. Given the far-reaching implications of the district court's order, this appeal is appropriate for expedition and prompt resolution.

## **Conclusion**

The NCAA respectfully requests that the Court grant its motion and enter an order to expedite the briefing and oral argument of this appeal.

Dated this 12th day of February, 2025.

/s/ *Kate E. Gehl*

Thomas L. Shriner, Jr.
Kate E. Gehl (Counsel of Record)
Max S. Meckstroth
David J. Wenthold
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.297.5601 (TLS)
414.297.5279 (KEG)
414.319.7022 (MSM)
414.297.4985 (DJW)
tshriner@foley.com
kgehl@foley.com
mmeckstroth@foley.com
dwenthold@foley.com

*Counsel for Defendant-Appellant National Collegiate Athletic Association*

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(g), I hereby certify:

1. This motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 2,148 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f). As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word-count feature of Microsoft Word Professional Plus 2016 in preparing this certificate.

2. This motion complies with the typeface requirements for briefs of Fed. R. App. P. 32(a)(5) and Cir. R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word Professional Plus 2016 in 12-point Century Schoolbook font (for text) and 11-point Century Schoolbook font (for footnotes).

Dated: February 12, 2025

/s/ *Kate E. Gehl*
Kate E. Gehl

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: February 12, 2025

/s/ *Kate E. Gehl*
Kate E. Gehl